UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
R.A.R.R.,

Petitioner,

- against -

JUDITH ALMODOVAR, *in her official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement, et al.*,

Respondents.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-6597 (PKC)

PAMELA K. CHEN, United States District Judge:

Petitioner R.A.R.R.[1] filed a petition for a writ of habeas corpus challenging Respondents' decision to detain him without an individualized bond hearing. The Court granted his petition, ordering his release from unlawful detention. Petitioner has moved for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). For the reasons discussed below, Petitioner's motion for attorneys' fees is granted, and Petitioner is awarded $12,510.22 in attorneys' fees pursuant to the EAJA.

## BACKGROUND

Petitioner R.A.R.R. is a national of El Salvador who has been living in the United States since January 2024. (*See* Pet., Dkt. 1, ¶¶ 1–2.) On August 26, 2025, while Petitioner was en route to work with his co-worker, they were pulled over by Immigration and Customs Enforcement ("ICE") agents on Long Island at around 6:00 a.m. (Decl. Pet. R.A.R.R. ("R.A.R.R. Decl."), Dkt. 1-2, ¶¶ 5–6; Decl. Katherine D. Rey ("Rey Decl."), Dkt. 11-1, ¶ 12.) After asking Petitioner a

[1] The Court granted Petitioner's request to proceed pseudonymously in the action. (*See* 12/02/2025 Dkt. Order.)

series of questions, the ICE agents arrested him and eventually transferred him to the Metropolitan Detention Center where he remained for nearly four months until the Court ultimately ordered his release. (*See* Rey Decl., Dkt. 11-1, ¶ 14; 12/19/2025 Dkt. Order (ordering release).) On November 26, 2025, Petitioner brought this action seeking a writ of habeas corpus in which he claimed that his detention was unlawful and that he was thus entitled to release. (Pet., Dkt. 1, ¶¶ 4, 6–7.) The Petition was assigned to this Court on December 1, 2025, and later that day, Respondents filed an agreed-upon briefing schedule for the Petition, such that Respondents would file an opposition to the Petition on December 10, 2025, and Petitioner would file a reply in support of the Petition on December 19, 2025. (*See* Dkt. 6.) The Court adopted the briefing schedule, in part, ordering Petitioner to file his reply by December 17, 2025, and scheduling a hearing on the Petition for December 19, 2025. (*See* 12/02/2025 Dkt. Order.)

At the hearing on December 19, 2025, the Court granted the Petition and ordered Petitioner's release. (*See* 12/19/2025 Dkt. Order.) The Court subsequently issued a Memorandum & Order supplying the reasons for granting the Petition. (*See* Mem. & Order, Dkt. 18.) In doing so, the Court recognized that "[t]he overwhelming majority of courts in this District and across the country have found that noncitizens like Petitioner—who were detained by ICE after living in the United States for years—were 'already in the country' and therefore could only be detained pursuant to [8 U.S.C. § 1226(a)]." (*Id.* at 7–8 (collecting cases).) Accordingly, the Court held that Petitioner was detained pursuant to 8 U.S.C. § 1226(a), ("Section 1226(a)")—not 8 U.S.C. § 1225(b)(2)(A) ("Section 1225(b)(2)(A)")—and that his detention without any

individualized custody determination violated his right to due process under the Fifth Amendment of the Constitution. (*Id.* at 7–10.)[2]

On March 23, 2026, Petitioner moved for $12,510.22 in attorneys' fees pursuant to the EAJA. (Mot. Fees ("Fees Mot."), Dkt. 20-1, at 1.) On April 27, 2026, Respondents filed an opposition to Petitioner's motion for fees, (Opp'n Mot. EAJA Fees ("Fees Opp'n"), Dkt. 23), and on May 4, 2026, Petitioner filed a reply in further support of his motion, (Reply Supp. Mot. Fees ("Fees Reply"), Dkt. 24).

## LEGAL STANDARD

The EAJA empowers federal courts to "award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Second Circuit has established that "a habeas proceeding challenging immigration detentions constitutes a 'civil action' under the EAJA." *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005).

To award EAJA fees, the Court must conclude:

> (1) that the claimant [is] a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be

[2] The Court's Memorandum & Order also addressed a second issue raised in the Petition regarding "whether the [William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232] entitled Petitioner to additional protections based on his designation as an unaccompanied minor or [unaccompanied noncitizen child], even though he is now older than 18." (Mem. & Order, Dkt. 18, at 7.) However, the Court does not address here whether Respondents' litigation position on that issue was "substantially justified" since neither party offers any argument on this issue.

> submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990). Furthermore, the attorneys' fees must be "reasonable." *See* 28 U.S.C. § 2412(d)(2)(A) (defining "fees and other expenses" to include "reasonable attorney fees" below "$125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee").

Where a petitioner "demonstrate[s] that [he] is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was 'substantially justified.'" *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999) (per curiam).[3] The Government's position is substantially justified if it "had a reasonable basis in both law and fact." *Vacchio*, 404 F.3d at 674 (quoting *Sotelo-Aquije v. Slattery*, 62 F.3d 54, 57 (2d Cir. 1995)); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (concluding that "substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person," which is "no different from the 'reasonable basis both in law and fact' formulation"). When evaluating whether the Government's actions were "substantially justified," courts consider the Government's pre-litigation conduct, as well as its litigation positions, because "under the EAJA 'only one threshold determination for the entire civil action is to be made.'" *Senville v. Madison*, 331 F. App'x 848, 850 (2d Cir. 2009) (summary order) (quoting *Jean*, 496 U.S. at 159); *see also* 28 U.S.C. § 2412(d)(2)(D) (defining "position of the United States" to mean, "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based").

[3] The prevailing party is the one to whom "the court grants relief . . . based on 'an assessment of the merits' and thus 'unquestionably' and 'materially alter[s] the existing legal relationship between the parties.'" *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 505–06 (S.D.N.Y. 2025) (alteration in original) (quoting *Vacchio*, 404 F.3d at 674).

## DISCUSSION

Respondents do not dispute that Petitioner is a "prevailing party" or that Petitioner's motion for fees is timely. Instead, Respondents oppose Petitioner's fee request on only two grounds: (1) "Respondents' legal position was substantially justified," and (2) if the Court awards fees, Petitioner "has not met his burden of justifying the need for two attorneys to expend a total of nearly 48 hours of time on this action, thus warranting a substantial reduction of any award." (Fees Opp'n, Dkt. 23, at 1.)

### I. Respondents' Position Was Not "Substantially Justified"

Respondents have failed to carry their burden of demonstrating that their pre-litigation actions and litigation positions were "substantially justified." Respondents argue that "[g]iven the existence of numerous, well-reasoned decisions from federal courts at the district and appellate levels agreeing with Respondents' position, and the absence of controlling authority foreclosing that position, Respondents' arguments were substantially justified." (*Id.* at 5.) In support, Respondents cite decisions by the Fifth Circuit and Eighth Circuit Courts of Appeals, ten decisions by seven district court judges in this Circuit, and various decisions by district courts outside this Circuit that concluded Respondents' position was legally correct. (*See id.* at 3–4 & n.1 (collecting cases).)

Respondents' reliance on the case law they have collected is misplaced because these decisions mostly post-date the relevant events in this matter. As Respondents acknowledge, "[t]he issue for EAJA purposes is . . . whether the government was substantially justified in believing the law not to have foreclosed its position *during the underlying litigation*." *Dunn*, 169 F.3d at 786 (emphasis added); (*see* Fees Opp'n, Dkt. 23, at 3 (quoting the same language)).

Respondents unlawfully detained Petitioner on August 26, 2025 pursuant to Section 1225(b)(2)(A). (*See* Rey Decl., Dkt. 11-1, ¶ 14). The decisions Respondents cite from

district courts in this Circuit and the Fifth Circuit and Eighth Circuit Courts of Appeals approving of their legal position *all* came after Respondents purportedly relied on Section 1225(b)(2)(A) to detain Petitioner. (*Compare* Fees Opp'n, Dkt. 23, at 3–4 (citing cases dated on or after December 4, 2025), *with* Rey Decl., Dkt. 11-1, ¶ 14 (stating Petitioner was detained on August 26, 2025).) Respondents have not pointed to a single decision from any court anywhere in the country that had held Respondents' litigation position was legally correct *before* Respondents detained Petitioner.[4] Therefore, none of the decisions that Respondents rely on have any bearing on whether Respondents were "substantially justified" at the time they detained Petitioner purportedly pursuant to their authority under Section 1225(b)(2)(A).[5]

Neither do Respondents' case citations support the proposition that their litigation position was "substantially justified" when advanced in their brief in opposition to the Petition on December 11, 2025. Of the cases Respondents cite, eight of the ten district court decisions from this Circuit and the two courts of appeals decisions were issued after that date. (*See* Resp'ts' Opp'n Pet., Dkt. 11, at 2–3.) Respondents' citations to two district court decisions in this Circuit that had approved of Respondents' statutory interpretation position before that date do not establish that Respondents' position was "substantially justified" because those decisions did not represent the

---

[4] Even when considering the dozens of out-of-circuit district court decisions that Respondents cite, none approved of Respondents' position before they relied on this theory to detain Petitioner. (*See* Fees Opp'n, Dkt. 23, at 4 n.1 (collecting cases dated September 24, 2025 and later).)

[5] Furthermore, to the extent the Court should consider decisions that post-date Respondents' actions in determining whether Respondents' litigation position was "substantially justified," the Second Circuit Court of Appeals has since squarely held that Respondents' position was legally incorrect. *See Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *cert. granted sub nom. Rhoney v. Barbosa da Cunha*, No. 26-104, --- S.Ct. ----, 2026 WL 2942994 (U.S. Oct. 1, 2026). So, any post-hoc survey of court decisions only adds further weight against a finding that Respondents' position was "substantially justified."

majority, or even a substantial minority, view in this Circuit. (*See* Fees Opp'n, Dkt. 23, at 3–4 (citing *Xiaoquan Chen v. Almodovar*, 815 F. Supp. 3d 314, 319–24 (S.D.N.Y. 2025) (Vyskocil, J.) (issued Dec. 4, 2025); *Candido v. Bondi*, No. 25-CV-0867 (JLS), 2025 WL 3484932, at *3 (W.D.N.Y. Dec. 4, 2025) (Sinatra, J.)).)

Nor were those two decisions the first in this Circuit to address the issue. As early as August 13, 2025, a court in the Southern District of New York held that Respondents' litigation position was legally incorrect, *see Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 491 (S.D.N.Y. 2025) (Ho, J.), and a court in this District held the same on September 29, 2025, *see J.U. v. Maldonado*, 805 F. Supp. 3d 482, 494 (E.D.N.Y. 2025) (Merchant, J.). After *J.U.*, and before Respondents filed their response papers here, at least eight more decisions in this District also concluded that Respondents' position was legally incorrect.[6] Meanwhile, not a single court in this District had accepted Respondents' litigation position as of December 11, 2025. This consistent and substantial record of courts in this District rejecting Respondents' position, with only scant support elsewhere in the Circuit, weighs strongly against finding that Respondents' litigation position was "substantially justified" at the time they advanced it in this case. *See Pierce*, 487 U.S. at 569 (recognizing that "a string of losses can be indicative" of a litigation position not being "substantially justified").

[6] *See Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434, at *4–8 (E.D.N.Y. Oct. 5, 2025) (Merchant, J.); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 484–90 (E.D.N.Y. 2025) (Morrison, J.) (issued Oct. 6, 2025); *Sarmiento Guerrero v. Noem*, 815 F. Supp. 3d 181, 185–89 (E.D.N.Y. 2025) (Komitee, J.) (issued Nov. 18, 2025); *Montoya v. Bondi*, No. 25-CV-6363 (JMA), 2025 WL 3280762, at *1 (E.D.N.Y. Nov. 25, 2025) (Azrack, J.); *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400–02 (E.D.N.Y. 2025) (Gonzalez, J.) (issued Nov. 25, 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 308–12 (E.D.N.Y. 2025) (Choudhury, J.) (issued Nov. 28, 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Ye v. Maldonado*, No. 25-CV-6417 (AMD), 2025 WL 3521298, at *3–6 (E.D.N.Y. Dec. 8, 2025) (Donnelly, J.); *Molina v. Deleon*, No. 25-CV-6526 (JMA), 2025 WL 3525857, at *1 (E.D.N.Y. Dec. 9, 2025) (Azrack, J.).

Even assuming, *arguendo*, that Respondents' litigation position was "substantially justified" when they filed their brief in opposition to the Petition on December 11, 2025, Respondents point to no authority to suggest it was "substantially justified" at the time they detained Petitioner pursuant to Section 1225(b)(2)(A) on August 26, 2025. *See Gomez-Beleno v. Holder*, 644 F.3d 139, 145 (2d Cir. 2011) (assessing whether the "position of the United States" was "substantially justified" by looking at both the Government's litigation position and the Government's pre-litigation conduct at the agency level). As discussed above, Respondents do not cite a single decision supporting their position before Respondents detained Petitioner on August 26, 2025, and the Court is aware of only one.[7] Instead, Respondents suggest that it was "substantially justified" because of "the absence of controlling authority foreclosing that position" when Petitioner was detained in August 2025. (Fees Opp'n, Dkt. 23, at 5.) The Court finds this argument disingenuous. There was no "controlling authority foreclosing that position," (*id.*), because "[f]or *decades*, 'DHS's longstanding interpretation' ha[d] been that [Section] 1226[(a)], and not [Section] 1225[(b)(2)(A)], 'applies to [noncitizens] who have crossed the border between ports of entry and are shortly thereafter apprehended,'" *Savane v. Francis*, 801 F. Supp. 3d 483, 489 (S.D.N.Y. 2025) (emphasis added) (first quoting Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954); and then citing 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (Department of Justice announcing new regulations and stating that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.")). The Government cannot

[7] *See Barco Mercado*, 811 F. Supp. at 506 (Appendix B cataloguing 362 decisions from around the country as of November 2025 in which Respondents' position had been rejected 350 times, and showing that the earliest acceptance of Respondents' position came on August 5, 2025 (citing *Pipa-Aquise v. Bondi*, No. 25-CV-1094 (MSN) (WBP), 2025 WL 2490657 (E.D. Va. Aug. 5, 2025))).

"revisit[] [its] legal position"[8] for policy reasons without due care for its soundness as a matter of law, point to a lack of controlling authority foreclosing it due to its novelty, and then claim its position was "substantially justified" because no authorities had *yet* found it *unjustified*.[9] Finding that the Government's actions under such circumstances were "substantially justified" would undermine "the EAJA's fundamental objective to encourage individuals to challenge governmental policies that are not 'substantially justified.'" *Healey v. Leavitt*, 485 F.3d 63, 68 (2d Cir. 2007) (citing H.R. Rep. No. 96-1418, at 9 (Sep. 26, 1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4988).

In sum, Respondents have failed to carry their burden of demonstrating that their position—that Petitioner, a non-U.S. citizen who had never been admitted to, but has been physically present in, the United States was subject to mandatory detention under Section 1225(b)(2)(A)—was "substantially justified." Accordingly, the Court finds that Petitioner is entitled to attorneys' fees under the EAJA.

---

[8] *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/BZ9N-H9FM] (last visited October 1, 2026) (ICE memorandum from July 8, 2025 disseminating "Interim Guidance" to "All ICE Employees," including that DHS "has revisited its legal position on detention and release authorities" insofar as "DHS has determined that [8 U.S.C. § 1225], rather than [8 U.S.C. § 1226], is the applicable immigration detention authority for all applications for admission," defined to include "[a noncitizen] present in the United States who has not been admitted").

[9] *See Barbosa da Cunha*, 175 F.4th at 96 (concluding that "the government's attempt to muddy these textually clear waters" by pursuing the same litigation position as here "defies the statute's context, structure, history, and purpose"); *id.* at 93 (reiterating that even if the Second Circuit were incorrect that "the unambiguous language of the statute unquestionably favors Petitioner's interpretation," the Circuit would still consider decades of consistent Executive Branch practice that contradicts the Government's current position, as "it is hard to fathom how the plain text could be read to somehow unambiguously favor the government").

## II. Reasonable Fees

Having concluded that Petitioner is entitled to attorneys' fees, the Court next addresses whether the amount of EAJA fees Petitioner has requested is reasonable. *See Merlo Puerto v. Leeper*, 834 F.Supp.3d 337, 345–46 (E.D.N.Y. June 4, 2026) (assessing reasonableness of EAJA fees requested after court granted habeas petition for immigration detainee); *L.R.C. v. Maldonado*, No. 25-CV-6825 (AMD), 2026 WL 946787, at *3–5 (E.D.N.Y. Apr. 7, 2026) (same). Petitioner seeks $12,510.22 in attorneys' fees for 47.8 hours of work at a rate of $261.72 per hour, an hourly rate calculated using Consumer Price Index values to make cost-of-living adjustments. (Fees Mot., Dkt. 20-1, at 10–11.) Respondents dispute the reasonableness of Petitioner's fee request due to the number of hours (47.8) billed, including because two attorneys, rather than one, worked on this matter. (Fees Opp'n, Dkt. 23, at 8.)[10]

Based on an independent analysis of Petitioner's attorneys' time entries, (Fees Mot. Ex. B, Dkt. 20-3, at ECF[11] 5–6; Fees Mot. Ex. C, Dkt. 20-4, at ECF 5), the Court finds that the number of hours billed by Petitioner's attorneys was reasonable. Petitioner's attorneys' time entries demonstrate that Petitioner's attorneys spent approximately 17 hours drafting and preparing the Petition, approximately 28 hours reviewing Respondents' brief in opposition to the Petition, drafting a reply brief, and preparing for oral argument, and approximately two hours preparing the instant motion for attorneys' fees. (*See generally* Fees Mot. Ex. B, Dkt. 20-3, at ECF 5–6; Fees Mot. Ex. C, Dkt. 20-4, at ECF 5.) Each of these allocations of attorney time appear entirely reasonable. The 17 hours spent drafting and preparing the Petition is reasonable in light of the

---

[10] Respondents do not dispute the hourly rate that Petitioner employs, and the Court likewise finds no reason to take issue with the hourly rate.

[11] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

exceptionally thorough and well-researched legal arguments advanced in the Petition. (*See generally* Pet., Dkt. 1.) Meanwhile, 28 hours to review Respondents' brief, prepare a reply brief, and prepare for oral argument is similarly reasonable given the quality of the briefing. Even more so in light of the voluminous nature of Respondents' 39-page opposition brief, (*see* Resp'ts' Opp'n Pet., Dkt. 11), for which Respondents sought leave to exceed the Court's standard page limits given what Respondents characterized as "the complex legal issues raised by the Verified Petition," (Resp'ts' Mot. Leave File Excess Pages, Dkt. 10). This is indicative of diligent work, not excess.[12] The Court finds that the hours spent by counsel for Petitioner were wholly reasonable and do not warrant any reduction.

Respondents also argue that "the number of hours [should] be reduced by at least 50%, to bring any fee award closer in line" to the fee amounts in other habeas petition cases brought by immigration detainees, (Fees Opp'n, Dkt. 23, at 8), but two of the cases Respondents cite for a lower EAJA fee award—*Ye v. Maldonado*, No. 25-CV-6417 (AMD) (E.D.N.Y.), and *Ram v. Maldonado*, No. 26-CV-0266 (AMD) (E.D.N.Y.), (*see* Fees Opp'n, Dkt. 23, at 8)—were stipulated fee amounts, (*see id.* at 4 (acknowledging that the fees awarded in *Ye* and *Ram* were "so-ordered stipulation[s]")). Respondents cite a third case, *R.P.L. v. Maldonado*, No. 25-CV-6886 (HG) (E.D.N.Y.), claiming that it is an example of a "habeas case litigated by [a] single attorney resulting in release" where the petitioner sought "EAJA fees in the amount of $6,558.31," (*see* Fees Opp'n, Dkt. 23, at 8), but *R.P.L.*, in fact, involved two attorneys representing the

---

[12] If anything, Petitioner's attorneys' hours undercount the work that his attorneys performed, as Petitioner did not include entries for drafting his reply brief for the present fees motion. (*See* Fees Reply, Dkt. 24, at 9 (noting that Petitioner did not add hours to the fees request for time spent drafting the fees reply brief)); *cf. Patel v. Almodovar*, No. 26-CV-1420 (DLC), 2026 WL 1649635, at *1 n.2 (S.D.N.Y. June 8, 2026) ("The Supreme Court has explained that an EAJA fee award may encompass the time spent to prepare 'a party's preparation of a fee application and its ensuing efforts to support that same application.'" (quoting *Jean*, 496 U.S. at 161–62)).

petitioner, *see* Mot. Att'y Fees, Ex. B, *R.P.L. v. Maldonado*, No. 25-CV-6886 (HG) (E.D.N.Y. Mar. 30, 2026), Dkt. 15-3 (listing time entries for two attorneys), and was far simpler than this case because the respondents there conceded that the court's prior decision governed, *compare* Pet.'s Reply, *R.P.L. v. Maldonado*, No. 25-CV-6886 (HG) (E.D.N.Y. Dec. 24, 2025), Dkt. 9 (seven-page reply brief in which petitioner noted that "[r]espondents concede[d] that th[e] [c]ourt's [prior] decision in *O.F.B. v. Maldonado* . . . control[led]" the outcome), *with* (Pet'r's Reply, Dkt. 14 (28-page reply brief in response to Respondents' 39-page opposition brief).) Respondents also cite cases from many years ago in other districts dealing with entirely inapposite issues. (*See id.* at 13 (first citing *Degreenia-Harris v. Life Ins. Co. of N. Am.*, No. 19-CV-0218 (CR), 2021 WL 5979683, at *12 (D. Vt. Dec. 17, 2021); and then citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *14 (S.D.N.Y. May 14, 2012)).) In sum, these authorities are completely irrelevant to the analysis of what is a reasonable amount of attorney hours in this case.

**CONCLUSION**

For the reasons set forth above, Petitioner's motion for EAJA fees is granted. Petitioner is awarded $12,510.22 in attorneys' fees pursuant to the EAJA, 28 U.S.C. § 2412. Respondents are directed to file a status report on the docket within twenty-one (21) days of this Order indicating whether the fees have been paid to Petitioner's counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 26, 2026
Brooklyn, New York